UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PETE WRIGHT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    No. 4:24 CV 397 CDP |
| | ) |
| LANE HARRIS, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Self-represented plaintiff Pete Wright asserts that he was subjected to the tortious conduct of defendant Lane Harris, a detention officer at the St. Francois County Jail, when Wright was housed at the Jail in 2023 and 2024 as a pretrial civil detainee. In this diversity action, Wright brings Missouri State-law claims of conversion, slander, and assault and battery, alleging that Harris took and failed to return various items of Wright's personal property; made false statements to the jail supervisor that Wright committed conduct violations; and grabbed Wright's right arm causing pain and further injury to a fractured hand; and forcibly pushed Wright into his cell and down the hallway. Because the undisputed evidence before the Court shows that Wright cannot meet the elements of conversion and slander, I will grant Harris's motion for summary judgment on those claims. I will also grant Harris's motion for summary judgment on Wright's assault-and-

battery claim under the doctrine of official immunity.

## Legal Standard

When considering a motion for summary judgment, I must view the facts and inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). As the moving party, defendant must establish that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c)(1); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once a motion is properly made and supported, the nonmoving party must either proffer evidence in the record that demonstrates a genuine issue of material fact or show that the moving party's proffer does not establish the absence of a genuine dispute. Fed. R. Civ. P. 56(c)(1); *Anderson*, 477 U.S. at 248; *Conseco Life Ins. Co. v. Williams,* 620 F.3d 902, 910 (8th Cir. 2010); *Howard v. Columbia Pub. Sch. Dist.,* 363 F.3d 797, 800-01 (8th Cir. 2004). A verified complaint is equivalent to an affidavit for summary judgment purposes. *Hanks v. Prachar*, 457 F.3d 774, 775 (8th Cir. 2006) (per curiam).

At the summary judgment stage, courts do not weigh the evidence and decide the truth of the matter, but rather determine if there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. However, summary judgment may be

appropriate "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it[.]" *Scott v. Harris*, 550 U.S. 372, 380 (2007).   In such circumstances, the mere existence of some alleged factual dispute will not serve to defeat summary judgment; instead, the factual dispute must be "genuine."   *Id.*

## Discussion

The evidence before the Court, including Wright's verified complaint, shows that Wright cannot establish all elements necessary to prevail on his claims of conversion or slander.   Additionally, video evidence before the Court discredits Wright's claim of assault and battery, but Harris is nevertheless entitled to official immunity on the claim.   As no genuine issue of material fact exists for trial on Wright's claims and Harris has established his entitlement to judgment as a matter of law on the claims, I will grant Harris's motion for summary judgment.

<u>Conversion</u>

Under Missouri law, "[c]onversion is the unauthorized assumption of the right of ownership over the personal property of another to the exclusion of the owner's rights."   *Cepia, LLC v. Universal Pictures Visual Programming Ltd.*, 177 F. Supp. 3d 1129, 1141 (E.D. Mo. 2016) (quoting *Emerick v. Mutual Ben. Life Ins. Co.*, 756 S.W.2d 513, 523 (Mo. banc 1988)).   To prevail on his claim of conversion against Harris, Wright must establish:   1) that he was the owner of the

property in question; 2) that Harris wrongfully appropriated the property with the intent to exercise some control over it; and 3) that Harris deprived Wright of his right of possession of the property.  *Id.*

There is no unauthorized taking if the property owner consents to the appropriation of his property.  *Maples v. United Sav. & Loan Ass'n.,* 686 S.W.2d 525, 527 (Mo. Ct. App. 1985).   Consent can be either express or implied.  *Id.* (citing *Graves v. Stewart,* 642 S.W.2d 649, 650–651 (Mo. banc 1982)).  "Implied" means necessary deduction from the circumstances, general language, or conduct of the parties.  *Id.* (citing *Farm Bureau Mut. Ins. Co. of Mo. v. Dryden,* 492 S.W.2d 392, 394 (Mo. Ct. App. 1973)).  "Implied consent" is that manifested by signs, actions or facts, or by inaction or silence which creates an inference that consent has been given.  *Id.* (citing *State v. Stanfield,* 1 S.W.2d 834, 836 (Mo. 1927)).  Accordingly, if Harris believed and it reasonably appeared to him that Wright was assenting to the taking of his property, then conversion did not occur. *Maples*, 686 S.W.2d at 527-28.   Assent is not determined by the state of mind, but rather by the conduct of the parties and the language employed by them, judged by a reasonable standard.  *Id.*

Here, Wright asserts that Harris confiscated various items of his personal property in July 2023 when searching his cell for contraband, and failed to return five pieces of artwork, a trial transcript, and State-agency contact information.

The undisputed evidence before the Court shows that on July 25, 2023, defendant Harris and another jail staff member, Deputy Barton, went to Wright's cell to search for suspected contraband. During the search, Harris and Barton found paperwork that contained sexually explicit references and included the names of other staff members, which Harris and Barton perceived as threats. Upon Wright's protestation against the removal of the paperwork, night shift supervisor Corporal Foot went to Wright's cell and spoke to the three men. Harris and Barton showed the paperwork to Foot and explained their reasons for concern, upon which Foot explained to Wright that he would place the material in a manilla envelope and provide it to the Jail Administrator, Lieutenant White, for his review. Foot then placed all the items into a manilla envelope. Harris did not see the envelope or its contents after that point.

On July 27, 2023, Lt. White met with Wright about the items in the manilla envelope, and they discussed which items Wright could keep in his cell and which items had to be placed in Wright's property locker. Wright did not look at everything that White returned to him, but he noticed days later when looking through the envelope that some items were missing. Nearly two months later, on September 20, Wright asked Harris to return the missing items. Harris informed Wright that he did not have them.

Harris, Barton, and Foot all attest that Wright indicated that he agreed with

Foot's manilla-envelope solution (ECF 27-2, Harris Decl.; ECF 27-3, Barton Decl.; ECF 27-4, Foot Decl.), and Wright presents no evidence otherwise. Harris argues that this circumstance shows that Wright impliedly consented to the appropriation of his materials. Although Wright avers in an unsworn statement that he did not have a choice in the matter (*see* ECF 39 at ¶ 13), he appears to argue that regardless, the conversion occurred when Harris turned over the paperwork to Foot, which happened before Foot proposed the manilla-envelope solution. Wright attests in his verified complaint that he did not consent to Harris's action, and evidence shows that Wright protested Harris's initial confiscation of the materials. Even so, the undisputed evidence shows that Harris did not dispossess Wright of his claimed right to the property as he merely showed the material to Foot for his review. It was Foot who allegedly determined to remove the property from Wright's cell and did so, and it was White who allegedly determined which property could be returned to Wright. *See Chemical Sales Co. v. Diamond Chem. Co.*, 766 F.2d 364, 367 (8th Cir. 1985) (Missouri courts have emphasized that the essence of conversion lies "not in the acquisition of the property by the wrongdoer, but in the wrongful deprivation of it to the owner.").

Because the undisputed evidence shows that Harris did not wrongfully deprive Wright of his right of possession to his property, I will grant Harris summary judgment on Wright's claim of conversion.

Slander

Slander consists of "fleeting speech" that is defamatory. *Nazer v. Missouri Valley Coll.*, 860 S.W.2d 303, 313 (Mo. banc 1993). Under Missouri law, defamation is established by: 1) the publication, 2) of a defamatory statement, 3) that identifies the plaintiff, 4) that is false, 5) that is published with the requisite degree of fault, and 6) damages the plaintiff's reputation. *Overcast v. Billings Mut. Ins. Co.*, 11 S.W.3d 62, 70 (Mo. banc 2000). The publication requirement means "the communication of defamatory matter to a third person." *Dean v. Wissmann*, 996 S.W.2d 631, 633 (Mo. Ct. App. 1999). Under the doctrine of intra-corporate immunity, however, "communications between officers of the same corporation in the due and regular course of the corporate business . . . are not publications to third persons" because the corporation "is but communicating with itself." *Id.* at 633-34. *See also Duncan v. Curators of Univ. of Mo.*, No. 24-CV-04096-SRB, 2024 WL 3520847, at *6 (W.D. Mo. July 22, 2024). Because a public entity must "communicate within itself" the same as a private, for-profit corporation, intra-corporate immunity applies to public entities as well. *Porter v. City of Lake Lotawana*, No. 07-00461-CV-W-REL, 2009 WL 10441610, at *58 (W.D. Mo. Mar. 31, 2009).

Here, Wright asserts that Harris slandered him when Harris told his supervisor, Sergeant Hodge, and Detention Officer Reid that Wright had violated

- 7 -

two rules by not wearing his identification bracelet at all times and by using his personal cup at mealtime. Wright contends that those statements were false because there were no such rules in place at the time.

Assuming that Harris's challenged statements were capable of defamatory meaning, there was no publication to third persons in the circumstances of this case. Harris communicated his statements to a supervisory jail official in the presence of another detention officer for the purpose of advising the officials that Wright failed to comply with jail rules. Because Harris's statements were made to two jail officials in the ordinary course of business, they were part of the business of a county jail communicating with itself and do not constitute publication of a defamatory matter to third persons. The intra-corporate immunity doctrine therefore bars Wright's claim that Harris slandered him, and Harris is entitled to summary judgment on the claim. *See Parker v. City of Vandalia, Mo.*, No. 2:18 CV 13 JMB, 2021 WL 1057355, at *10-11 (E.D. Mo. Mar. 18, 2021).[1]

Assault and Battery

Under Missouri law, a plaintiff must prove the following elements to

---

[1] Contrary to his attestation in his verified complaint and his sworn deposition testimony that Harris made the challenged statements to only Hodge and Reid (ECF 1 at ¶¶ 47, 48, 52; ECF 27-1 at dep. pp. 40-41), Wright now makes unsworn statements that publication to third parties occurred when Harris told Wright in the presence of other detainees that he had violated the rules. (*See* ECF 38 at p. 5; ECF 39 at ¶ 45.) Wright's unsworn statements cannot be used to defeat summary judgment. *Parker v. City of Vandalia, Mo.*, No. 2:18 CV 13 JMB, 2021 WL 1080681, at *14 (E.D. Mo. Mar. 18, 2021) (listing cases).

establish assault: "(1) defendant's intent to cause bodily harm or offensive contact, or apprehension of either; (2) conduct of the defendant indicating such intent; and (3) apprehension of bodily harm or offensive contact on the part of the plaintiff caused by defendant's conduct." *Phelps v. Bross*, 73 S.W.3d 651, 656 (Mo. Ct. App. 2002). Battery is defined as "an intended, offensive bodily contact with another." *Id.*

Here, Wright asserts that Harris committed assault and battery on two separate occasions. First, Wright contends that Harris grabbed him by the right arm on February 24, 2024, in relation to the identification-bracelet rule violation, which caused him pain and injury to his already fractured right hand and made him fear imminent peril. Wright also contends that on the following day, February 25, Harris grabbed his right arm a second time, in relation to the personal-cup violation, and forcibly shoved him out of the meal area and down the corridor to the supervisor's office, again creating fear of imminent peril.

The video evidence before the Court belies Wright's depiction of the two events. But even if offensive contact was apprehended or occurred, the doctrine of official immunity bars Wright's claims against Harris.

First, in support of his motion for summary judgment, Harris submitted video footage of the interactions between himself and Wright that form the basis of Wright's claims. The February 24 video shows Harris approaching Wright after

Wright collected his meal in the jail common area.  (ECF 28, Deft.'s Exh. H.) Harris declares that he approached Wright because he was not wearing his identification bracelet and informed him that he would need to be locked down in his cell because of it.  (ECF 27-2 at ¶ 19.)  Harris then took hold of Wright's left upper arm and guided him up the stairs to his cell.  Harris released Wright's arm once Wright was in the cell.  He did not push Wright into his cell.  The video shows that Harris did not have any contact with Wright's right arm at any time during the encounter.  (ECF 28, Deft.'s Exh. H.)

     The February 25 video shows Harris approaching Wright as Wright stood in line in the common area waiting for his meal.  (ECF 28, Deft.'s Exh. I.)  Harris declares he approached Wright because Wright was holding a personal cup that he was not permitted to use, and he reached toward Wright to confiscate the unauthorized cup.  (ECF 27-2 at ¶¶ 23, 24.)  The video shows that when Wright moved his arms and body to evade Harris's reach, Harris grabbed Wright's upper right tricep with his right hand and placed his left hand on the center of Wright's back.  Harris then held Wright's upper arms from behind as he escorted him from the meal distribution area.  Once out of that area and in a back corridor, Harris released Wright's right arm but continued to hold Wright's upper left arm as they walked down the corridor.  Harris did not push or shove Wright.  Harris released Wright's left arm when they reached the Central Control office.  Harris had no

physical contact with Wright thereafter, including during his escorting Wright back to his cell, waiting for him to collect his property, and escorting him back from his cell and exiting the common area.  (ECF 28, Deft.'s Exh. I.)

In *Scott v. Harris*, the Supreme Court found that video footage of a police chase conclusively demonstrated, contrary to the plaintiff's account of the event, that police had acted reasonably under the circumstances and had not committed a constitutional violation, thus entitling them to qualified immunity.  550 U.S. at 380-81.  Indeed, the Supreme Court found the plaintiff's version of the facts to be "so utterly discredited" by the facts depicted on the videotape "that no reasonable jury could have believed" his claims.  *Id.* at 380.  As a result, the Supreme Court reversed the denial of summary judgment, holding that the lower court should not have relied on the plaintiff's "fiction[al]" statements, but instead "it should have viewed the facts in the light depicted by the videotape."  *Id.* at 380-81.  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* at 380.

Here, Wright's version of the facts so blatantly contradicts the video evidence that no reasonable jury could believe that Harris's conduct met any element of assault or battery.  Harris's demeanor was calm throughout both

- 11 -

encounters, and Wright displayed no apprehension to Harris's conduct other than moving his cup away from Harris's reach on February 25. While Harris grabbed Wright's right upper arm briefly on February 25, the contact did not involve Wright's injured hand and Wright did not display any "substantial pain in his right hand" as alleged in his complaint. (ECF 1 at ¶ 56.) Indeed, the video shows that after packing his things in his cell on February 25, Wright carried his packed duffle bag over his right shoulder with his right hand in no apparent discomfort. (ECF 28, Deft.'s Exh. I.) Wright's assertions that Harris grabbed Wright's forearm, caused reinjury to Wright's hand, and forcibly shoved him out of the common area and down the corridor are discredited by the video footage. The footage also discredits Wright's claim that he experienced shock and fear by Harris's conduct. On the evidence before the Court, I cannot adopt Wright's version of the facts to defeat summary judgment on his assault and battery claim.

Regardless, the doctrine of official immunity bars Wright's claim against Harris. Official immunity "protects public employees from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts." *Boude v. City of Raymore, Mo*, 855 F.3d 930, 935 (8th Cir. 2017) (quoting *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. banc 2008)). *See also Burbridge v. City of St. Louis, Mo.*, 2 F.4th 774, 780-81 (8th Cir. 2021) (official immunity can apply to claims of assault and battery).

Discretionary acts require "the exercise of reason in the adaptation of means to an end and discretion in determining how or whether an act should be done or course pursued."  *Id.* (quoting *Fonseca v. Collins*, 884 S.W.2d 63, 66 (Mo. Ct. App. 1994)).   In Missouri, an "officer's decision to use force in the performance of his duties is discretionary."  *Id.*

Harris's conduct in holding Wright's arm(s) to guide him to his cell on February 24 and to Central Control on February 25 were discretionary acts in the performance of his official duty as a public detention officer.   Although Wright asserts that Harris's conduct is nevertheless actionable because he acted in bad faith or with malice by invoking unpublished rules so he could assault Wright, *see Boude*, 855 F.3d at 935 (bad faith and malice exceptions to official immunity), the undisputed evidence shows that Sgt. Hodge confirmed to Wright on February 25 that detainees were required by rule to wear their identification bracelets at all times and that jail rules permitted only jail-issued mugs for beverages during meals.   (ECF 27-1, Wright Dep. at dep. pp. 32, 33, 41; ECF 27-7, Hodge Decl. at ¶¶ 3, 7, 8.)   On this evidence, it cannot reasonably be inferred that Harris acted in bad faith or from an improper or wrongful motive by invoking existing rules when he observed Wright violating them.   Whether the rules were published or not is of no instance given Harris's understanding of them and his personal observation of Wright's violations.   Harris is therefore entitled to official immunity on Wright's

claim of assault and battery.

Accordingly, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that defendant Lane Harris's Motion for Summary Judgment [25] is **GRANTED**.

An appropriate Judgment is entered separately this date.

                                              CATHERINE D. PERRY
                                              UNITED STATES DISTRICT JUDGE

Dated this 28th day of January, 2026.